**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **4:13CR00130-2 SWW** |
| | ) | |
| **YAN LAPERLE** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District

    Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Suite A149
    Little Rock, AR 72201-3325

## DISPOSITION

United States District Judge Susan Webber Wright referred to the undersigned the motion of defendant Yan LePerle to suppress evidence. (Docket entries nos. 33 & 36). A hearing on the motion was conducted on October 17.

The defendant was arrested on April 12, 2013, following a traffic stop by Texas Department of Public Safety Trooper Ben Dollar. In his motion to suppress, Mr. LePerle contends he was detained too long, amounting to a seizure of his person in violation of the Constitution. As a result, the evidence obtained should be suppressed.

Trooper Ben Dollar was the sole witness at the hearing. Admitted into evidence were photographs as well as a videotape of a large portion of the traffic stop and the report composed by Dollar after the stop.

Trooper Dollar testified that LePerle was stopped for driving his minivan on the shoulder of

the highway. Dollar indicated that he observed LePerle over the white line, then doing an "abrupt yank back" to return to the highway. Dollar stopped the vehicle, directed Leperle to the front seat of the trooper's vehicle where Dollar inquired about the vehicle and the destination, noting that LePerle had a new California driver's license, and the minivan was recently purchased. LePerle indicated he was traveling to Knoxville, Tennessee, to visit a friend named Rick. LePerle stated that he planned to stay a week, and that he was bringing birthday gifts for Rick's daughter, which explained the presence of a plastic swimming pool which covered a large portion of the floor of the rear of the minivan. LePerle could not provide Rick's last name, and did not know the name or age of Rick's daughter.

Dollar observed that LePerle appeared to be slouching toward the driver's seat while driving. LePerle told Dollar that he was looking at a map, and a map was observed in the passenger's seat.

Dollar observed that LePerle appeared to be extremely nervous while speaking with Dollar, and the nervousness did not subside when Dollar told LePerle that he would be issued only a warning. In fact, Dollar testified that LePerle became more nervous during their discussions. LePerle told Dollar that he was shaky from drinking too much coffee.

Dollar gave LePerle the warning and asked LePerle to sign it, which he did. Dollar then returned all items back to LePerle and confirmed that LePerle had his property. Then, Dollar asked if he could inquire further of LePerle. LePerle agreed, and Dollar asked if LePerle had any illegal items in the vehicle, such as drugs or weapons, and whether the vehicle had an aftermarket compartment. LePerle responded in the negative, and Dollar then asked if he could search LePerle's vehicle. LePerle said that Dollar could search. Dollar confirmed this by asking, "Is that a yes?" LePerle agreed. A search of the vehicle revealed two aftermarket compartments and 69 pounds of

cocaine.

LePerle argues that Dollar violated his constitutional rights by continuing to detain him after the valid purpose of the traffic stop had concluded. On cross examination by LePerle's counsel, Dollar stated that he never told LePerle he was free to leave Dollar's car after he received the warning and his property was returned to him. He contends that a reasonable person would not have felt free to leave the trooper's car.

We are guided by the Eighth Circuit Court of Appeals, in *U.S. v. Munoz*, 590 F.3d 916 (8th Cir. 2010):

> After making a traffic stop, an officer may detain the driver while he complete "a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *United States v. Barragan,* 379 F.3d 524, 528–29 (8th Cir.2004), *quoting United States v. $404,905.00 in U.S. Currency,* 182 F.3d 643, 647 (8th Cir.1999). "Once this initial investigation is finished, however, the purpose of the traffic stop is complete and further detention of the driver or vehicle would be unreasonable, 'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention' or unless the continued encounter is consensual." *United States v. Flores,* 474 F.3d 1100, 1103 (8th Cir.2007), *quoting United States v. Jones,* 269 F.3d 919, 925 (8th Cir.2001). If the encounter becomes consensual, it is not a seizure, "the Fourth Amendment is not implicated, and the officer is not prohibited from asking questions unrelated to the traffic stop or seeking consent to search the vehicle." *Id.*
>
> Whether an encounter is consensual depends on the facts of the case. *Jones,* 269 F.3d at 925. "A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area." *Flores,* 474 F.3d at 1103. A person is seized within the meaning of the Fourth Amendment when, under the totality of the circumstances, "a reasonable person would have believed that he was not free to leave." *Jones,* 269 F.3d at 925. Circumstances of a seizure may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Flores,* 474 F.3d at 1103, *quoting United States v. White,* 81 F.3d 775, 779 (8th Cir.1996); *see also United States v. Nunley,* 873 F.2d 182, 184–85 (8th Cir.1989)

>(defendant was seized when officers' statements were more than routine questioning, and suggested to defendant that she was the particular focus of an investigation). Conversely, if a reasonable person feels free to "disregard the police and go about his business," the encounter is consensual. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), *quoting California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

590 F.3d at 920 -921.

We find the facts demonstrate that LePerle was not seized once Trooper Dollar handed him the warning and returned his paperwork to LePerle. As in *Munoz*, Trooper Dollar was the only officer in the vehicle[1] and Dollar did not display his weapon or touch LePerle. Further, we note that Dollar's tone of voice was not threatening or loud, and Dollar asked if he could inquire further of LePerle after returning the items to LePerle. Dollar's request for permission to inquire further, and LePerle's agreement to further inquiry, supports the notion that the seizure was concluded and LePerle was consenting to further interaction. Based upon these facts, we find LePerle was no longer seized and his constitutional rights were not violated when Trooper Dollar received LePerle's permission to search the minivan.

As noted in *Munoz*, after a traffic stop is completed a search is unreasonable unless something "that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." 590 F.3d at 921. In this instance, even if we assume that LePerle did not consent to the search of his minivan, there was reasonable suspicion to justify Dollar's

---

[1]Trooper Dollar testified that other officers arrived on the scene quickly as routine backup, but LePerle was dealing only with Dollar during the interview and may not have been aware of the other officers.

continuing detention of LePerle. Among the numerous factors amounting to reasonable suspicion: the extreme nervousness of LePerle, even after being told he would only receive a warning, LePerle's city of origination (near Los Angeles) was known by Dollar to be a common source of drugs, the presence of only a battery-powered screwdriver (a tool suitable for use with aftermarket compartments) in the glove box; LePerle not knowing Rick's last name, nor knowing the name and age of Rick's daughter; the covering of the rear area of the minivan (beneath which an aftermarket compartment would typically be located, according to Trooper Dollar's experience) with a plastic swimming pool; and LePerle's vehicle[2], a minivan, allegedly being recently purchased for general construction work. These factors provided Trooper Dollar with reasonable suspicion to prolong the traffic stop and ask LePerle additional questions even if we assume there was no consent by Mr. LePerle.

Based upon the foregoing, we recommend the motion to suppress be denied.

IT IS SO ORDERED this   17   day of October, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2]Trooper Dollar testified that minivan's of the style driven by LePerle are particularly suited for equipping with aftermarket compartments.